**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

CHASITY A.

                Plaintiff,

  v.                                             3:21-CV-551
                                                     (DJS)

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security,*[1]

                Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| LACHMAN, GORTON LAW FIRM<br>Attorney for Plaintiff<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, NY 13761 | PETER A. GORTON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>Attorney for Defendant<br>J.F.K. Federal Building - Room 625<br>15 New Sudbury Street<br>Boston, MA 02203 | NICOLE BOUDREAU, ESQ. |

**DANIEL J. STEWART
United States Magistrate Judge**

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted as Defendant here pursuant to FED. R. CIV. P. 25(d). The Clerk is directed to modify the docket accordingly.

## MEMORANDUM-DECISION AND ORDER[2]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for purposes of disability insurance benefits. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11 & 14. Plaintiff has also filed a Reply. Dkt. No. 17. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion is granted. The Commissioner's decision is affirmed.

### I. RELEVANT BACKGROUND

#### A. Factual Background

Plaintiff was born in 1980. Dkt. No. 8, Admin. Tr. ("Tr."), p. 35. Plaintiff reported that she has an associate's degree. Tr. at p. 37. She has past work experience as a medical secretary/nurse's aide. Tr. at pp. 37-39. Plaintiff alleges disability due to arthritis in her back, spinal stenosis, depression, anxiety, mood disorder, post traumatic stress disorder, vertigo, hip pain, and because her knee "gives out." Tr. at pp. 73-74.

#### B. Procedural History

Plaintiff applied for disability and disability insurance benefits in October 2019. Tr. at p. 72. She alleged a disability onset date of October 3, 2019. Tr. at p. 73.

---

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 6 & General Order 18.

Plaintiff's application was initially denied on January 9, 2020, and upon reconsideration on February 19, 2020, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 72, 102, 124. Plaintiff appeared at a hearing before ALJ Jennifer Gale Smith on October 6, 2020, at which she and a vocational expert testified. Tr. at pp. 33-66. On November 6, 2020, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 13-27. On April 8, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-3.

### C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 3, 2019, the application date. Tr. at p. 15. Second, the ALJ found that Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, mood disorder, obsessive compulsive disorder (OCD), attention deficit hyperactive disorder (ADHD), post traumatic stress disorder (PTSD), asthma, benign positional vertigo, obesity, lumbar degenerative disc disease (DDD) with radiculopathy, and right knee cartilage loss. Tr. at p. 16. Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 16-18. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following restrictions:

> [S]he should not climb ladders, ropes and scaffolds, balance, kneel, crouch and crawl. The claimant can occasionally climb ramps and stairs and stoop. The claimant should not work at unprotected heights or work in close proximity to dangerous machinery or moving mechanical parts of equipment. The claimant should have no more than occasional concentrated exposure to respiratory irritants such as dust, odors, fumes and gases, wetness, extreme hot and cold temperatures and humidity. The claimant should work at simple, routine and repetitive tasks. The claimant should work in a low stress job defined as occasional decision-making, occasional judgment required and occasional changes in the work setting. The claimant should work at goal oriented work rather than production pace rate work. The claimant should have occasional contact with coworkers, supervisors and the public.

Tr. at p. 18.

Fifth, the ALJ found that Plaintiff had past relevant work as a medical secretary/nurse's aide, but that she was unable to perform this work. Tr. at p. 25. Sixth, the ALJ found that Plaintiff was categorized as a "younger individual" on the date the application was filed. *Id.* Seventh, the ALJ found that there was work existing in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at pp. 26-27.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's

determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court

must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff's Memorandum of Law presents one issue for the Court's review. Plaintiff claims that the ALJ erred in the assessment of her RFC, specifically with regard to limitations for staying on task and attendance. Dkt. No. 11, Pl.'s Mem. of Law at pp. 7-18. Plaintiff argues that, in declining to include a specific limitation within the RFC for staying on task, the ALJ improperly substituted her lay opinion for "undisputed" medical opinions which found moderate or greater limitations in this category. Pl.'s Mem. of Law at pp. 7-9. Within this claim of error, Plaintiff also argues that the ALJ improperly assessed the medical opinion of consultative examiner Amanda Slowik, Psy.D, and improperly considered Plaintiff's activities of daily living ("ADLs") when weighing the evidence. Pl.'s Mem. of Law at pp. 9-17. As a result, Plaintiff further asserts that the ALJ's Step 5 determination was not supported by substantial evidence. Pl.'s Mem. of Law at p. 17. In response, Defendant asserts that the ALJ properly evaluated the medical opinions of record, and that the analysis and ultimate decision were both supported by substantial evidence. Dkt. No. 14, Def.'s Mem. of Law at pp. 5-21.

### A. The ALJ's RFC Determination

Insofar as Plaintiff argues that the ALJ impermissibly formed the RFC without a supporting medical opinion because the medical opinions regarding off-task/attendance limitations were "undisputed," her reasoning is unpersuasive. Plaintiff cites to *Riccobono v. Saul* in support of her contention that the ALJ here must articulate "overwhelmingly compelling reasons" for not doing so. 796 F. App'x 49, 50 (2d Cir. 2020); Pl.'s Mem. of Law at p. 8. *Riccobono*, however, is distinguishable from the facts at bar. "In *Riccobono*, the Second Circuit specifically stated that the ALJ could not interpret 'raw medical data' to discount the doctors' opinions. That does not mean that an ALJ is precluded from weighing two or more medical 'opinions' and formulating an RFC which does not specifically adhere to one opinion." *Sharon R. v. Kijakazi*, 2021 WL 3884257, at *9 (N.D.N.Y. Aug. 31, 2021) (internal citation omitted); *see also Christina M. v. Saul*, 2019 WL 3321891, at *7 (N.D.N.Y. July 24, 2019) ("There is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded only from the latter.").

The RFC is an administrative finding, not a medical finding, and there is no requirement that the RFC mirror any one medical opinion in the record. *Scott D. v. Comm'r of Soc. Sec.*, 2021 WL 4481191, at *4 (W.D.N.Y. Sept. 30, 2021). Nor is the ALJ required "to adopt each and every limitation identified" merely because she gave weight to an opinion. *Jennifer Lee W. v. Berryhill*, 2019 WL 1243759, at *4 (N.D.N.Y.

Mar. 18, 2019). Rather, "[i]t is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such." *Petell v. Comm'r of Soc. Sec.*, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (citing *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012)). This is exactly what the ALJ did here.

Plaintiff bases her argument primarily on the opinion of consultative examiner Amanda Slowik, Psy.D, who performed an examination of Plaintiff in December 2019. Tr. at pp. 401-405. Dr. Slowik found that Plaintiff's attention and concentration were "mildly impaired," and opined that her ability to sustain an ordinary routine was "moderately to markedly limited." Tr. at pp. 403, 404. Although ALJ Smith gave some weight to Dr. Slowik's opinion, she was under no obligation to accept every opined limitation. *Terri G. v. Comm'r of Soc. Sec.*, 2019 WL 1318074, at *9 (N.D.N.Y. Mar. 22, 2019). However, Plaintiff also asserts that the ALJ's evaluation of Dr. Slowik's opinion was flawed, arguing that ALJ Smith failed to address both the supportability and consistency of the opinion in her analysis. Pl.'s Mem. of Law at pp. 7-13.

Contrary to Plaintiff's contentions, the ALJ did not fail to address the supportability of Dr. Slowik's opinion. "The supportability factor measures whether the medical opinion is supported by objective medical evidence and accompanying explanations." *Darla W. v. Comm'r of Soc. Sec.*, 2021 WL 5903286, at *8 (N.D.N.Y. Dec. 14, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)). First, the ALJ specifically stated that she found Dr. Slowik's opinion partially persuasive, to the extent the findings were

9

supported by the longitudinal record.  Tr. at pp. 22-23.  Accordingly, the ALJ accepted many of Dr. Slowik's findings, including the lower (moderate) end of the range of limitation Dr. Slowik opined regarding Plaintiff's ability to sustain an ordinary routine.  In finding that Plaintiff had a moderate limitation in the area of concentrating, persisting, and maintaining pace, the ALJ acknowledged that Plaintiff reported difficulties such as trouble concentrating and maintaining focus, but also noted that Plaintiff was able to schedule, coordinate, and attend numerous service appointments for her developmentally-disabled son, while simultaneously accommodating her daughter's school schedule at BOCES and home schooling her other children.  Tr. at pp. 17, 19-20.  As a result, ALJ Smith rejected Dr. Slowik's upper-limit finding that Plaintiff would have up to a marked limitation in her ability to sustain an ordinary routine, finding it "speculative at best."  Tr. at p. 23.  While the ALJ did not specifically state the reason she found the limitation to be speculative, "the evidence of record permits [this Court] to glean the rationale." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011).  It is apparent on review that ALJ Smith found Plaintiff's subjective complaints not wholly credible, which consequently impacted the weight given to Dr. Slowik's opinion.

Dr. Slowik's conclusion was accompanied by minimal explanation, indicating only that Plaintiff's "[d]ifficulties are caused by distractibility, anxiety, low mood, and lack of motivation." Tr. at p. 404.  Notably, the ALJ pointed out that despite this, Dr. Slowik's consultative exam of Plaintiff revealed only a mild impairment in attention, concentration, and recent/remote memory skills.  Tr. at pp. 17, 403.  Dr. Slowik also

described Plaintiff as "cooperative" and "well groomed" with "adequate" social skills, fair insight and judgment, and average intellectual functioning. Tr. at pp. 402-403. Ultimately, however, Dr. Slowik's opinion did not reconcile these generally benign exam findings with her conclusion that Plaintiff would have up to a marked limitation in her ability to sustain an ordinary routine.

It also appears that many of Dr. Slowik's findings were based on Plaintiff's own self-reports. *See, e.g.*, Tr. at p. 403 ("The claimant stated that she only showers once or twice a week due to low motivation."); ("She rated her anxiety as 6.5/10 today."). The ALJ noted that those self-reports to Dr. Slowik, however, were somewhat inconsistent with self-reports given to another consultative examiner on the same day. Tr. at p. 17 ("However, on the same day that she made those statements to Dr. Slowik, she told a second consultative examiner that she cooked and cleaned every day …. Childcare was done every day … The undersigned notes that the Claimant did not qualify her ability to do these things as she had with Dr. Slowik."). The ALJ's consideration of this evidence was proper. *See Robinson v. Comm'r of Soc. Sec.*, 2018 WL 3583236, at *5 (W.D.N.Y. July 26, 2018) ("the ALJ appropriately relied on inconsistent statements by Plaintiff to determine that [Plaintiff] was less than fully credible.").

Although Plaintiff's subjective reports may be relevant, especially given the psychological nature of her impairments, ALJ Smith was "not required to accept the claimant's subjective complaints without question." *Richards v. Colvin*, 2015 WL 1472039, at *7 (N.D.N.Y. Mar. 31, 2015) (quoting *Genier v. Astrue*, 606 F.3d 46, 49

(2d Cir. 2010) (internal alteration omitted)). "Rather, the ALJ 'may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" *Id.* The ALJ is "the only participant in the disability appellate process who has the 'opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying'" and therefore is the "best-positioned to make accurate credibility determinations." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 188 (N.D.N.Y. 2019) (quoting *Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 439 (W.D.N.Y. 2019). As a result, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Id.*

    Here, the ALJ appropriately weighed Plaintiff's subjective complaints against her own reported activity level, her somewhat contradictory statements to different providers, and other evidence in the medical record and ultimately found that Plaintiff's complaints were not supported. Rather than impermissibly requiring objective diagnostic testing or assessments of Plaintiff's mental health symptoms to the exclusion of other relevant evidence, the ALJ merely found Plaintiff's self-reports not entirely credible. A review of the record evidence upon which ALJ Smith relied provides substantial evidence for this conclusion. For example, the ALJ identified Plaintiff's history of generally benign mental status exams, Tr. at pp. 274, 311, 316, 402-403, 567, 609, 681, 713, her compliance with medication management appointments, Tr. at pp. 658, 666, and evidence that her psychiatric symptoms were worsened by environmental and situational stressors rather than being constant, Tr. at pp. 624, 692, 693, 696.

Next, to the extent that Plaintiff argues the ALJ's consistency analysis of Dr. Slowik's opinion was similarly improper and based "solely" on an assessment of Plaintiff's activities of daily living, the Court again finds no error. "The consistency factor measures whether a medical opinion is consistent with medical and nonmedical evidence in a claim." *Darla W. v. Comm'r of Soc. Sec.*, 2021 WL 5903286, at *8. Contrary to Plaintiff's assertions, the ALJ measured the consistency of Dr. Slowik's assessment against both the record as a whole and against Plaintiff's self-reported ADLs. *See, e.g.,* Tr. at p. 23 ("The portion of Dr. Slowik's assessment, which is consistent with the totality of the longitudinal record is that the claimant is capable of simple work in a low contact, low stress environment such as contemplated by the residual functional capacity."). As noted, the ALJ discussed evidence from the longitudinal medical record, such as Plaintiff's history of generally benign mental status exams, her compliance with medication management appointments, and evidence that her psychiatric symptoms were worsened by environmental and situational stressors rather than being constant. Tr. at p. 22. The ALJ then contrasted Dr. Slowik's assessment, which she noted was based on a one-time exam of Plaintiff, against evidence of Plaintiff's activities shown throughout the record to determine consistency.

The analysis in the ALJ's decision demonstrates that she did not exclusively rely on Plaintiff's ADLs when evaluating the consistency of Dr. Slowik's opinion with other record evidence. For example, the ALJ considered mental status exams contained within the record, therapy notes, and multiple medical opinions, from Plaintiff's own

providers and from consultative examiners and agency doctors. Tr. at p. 22. Nevertheless, the Court also notes that it was appropriate for the ALJ to consider Plaintiff's ADLs for the purpose of determining consistency with alleged symptoms and claimed limitations. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (ALJ is permitted to consider daily activities in determining consistency with alleged symptoms); *Tanya W. v. Comm'r of Soc. Sec.*, 2021 WL 4942092, at *11 (N.D.N.Y. Oct. 22, 2021) (same); *Herrington v. Berryhill*, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (ALJ may properly consider activities of daily living, including childcare, when assessing a plaintiff's claimed symptoms and limitations).

The particular activities that the ALJ found relevant here would in fact support a higher level of functioning than Plaintiff alleged. The ALJ specifically identified that Plaintiff was able to "provide childcare for her four children, one of whom is developmentally disabled" on a daily basis. Tr. at p. 19. In that role, Plaintiff "does research, advocates for and schedules/manages all of the services her special needs child requires." Tr. at p. 19. These findings were based on Plaintiff's own statements, given to consultative examiners, and on her testimony during the hearing, and not, as Plaintiff claims, on the ALJ's own "assumptions." *See* Tr. at pp. 41-42 (testimony that Plaintiff homeschools her children), pp. 44-46 (testimony during hearing that Plaintiff advocates for her son by doing research, finding assistance and resources, scheduling appointments and services, and taking him to speech therapy two times per week), p. 314 (Plaintiff reported to provider that she was making progress in her advocacy for her son), pp. 41-

42 (Plaintiff stated to consultative examiner that she cooks, cleans, and provides childcare every day). The connection that ALJ Smith drew between these activities and Plaintiff's overall mental functional abilities is apparent to the Court on review.

Moreover, Dr. Slowik's opinion, to the extent it found a moderate limitation in Plaintiff's ability to sustain an ordinary routine, was generally consistent with the other medical opinions in the record. For example, Plaintiff's treating provider Ellen Zalesski, LMSW opined that Plaintiff would have a moderate limitation in her ability to perform at a consistent pace and that her concentration and persistence limitations could lead to a moderate amount of time off-task during a given work day, Tr. at p. 553, while treating provider Kay Hooper, NP similarly opined that Plaintiff would have a moderate limitation in the ability to perform at a consistent pace and moderate time off-task, Tr. at p. 755. *See also* Tr. at p. 82 (opinion of O. Fassler, PhD, opining moderate limitations in sustained concentration and persistence), Tr. at p. 97 (D. Brown, PsyD, opining moderate limitations in sustained concentration and persistence). Although NP Hooper and LMSW Zalesski were provided with a checkbox form that asked them specifically to opine on the amount of time Plaintiff would be off task in a normal work day, neither provider explained the basis for their finding in that category, which led the ALJ to conclude that the limitation was speculative and inconsistent with Plaintiff's activity levels. Tr. at pp. 23-24. This conclusion is consistent with C.F.R. § 404.1520c(c)(1), which states that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)

…, the more persuasive the medical opinions … will be." Given the lack of supporting explanations or citations to objective medical evidence by both NP Hooper and LMSW Zalesski, the ALJ was certainly entitled to find the opinions less persuasive. No other provider offered an opinion as to this specific limitation and, in any event, the ALJ was not required to accept it. *See Shyla D. v. Kijakazi*, 2022 WL 798158, at *6 (N.D.N.Y. Mar. 16, 2022) (discussing the "bedrock principle[] underlying court review of ALJ determinations … [that] an ALJ need not adopt every limitation stated in any particular medical opinion.").

Notwithstanding the lack of error found in the ALJ's conclusions, the Court also notes that the ALJ specifically found that Plaintiff's moderate limitations in concentration and persistence could be accommodated with a restriction to simple work in a low stress, low contact environment. Tr. at pp. 23-24. This conclusion is well-supported by substantial evidence in the record and by case law from within this Circuit. *Joycelyn A.C. v. Comm'r of Soc. Sec.*, 2022 WL 605736, at *6 (N.D.N.Y. Feb. 7, 2022) ("[T]he limitation to simple routine tasks and decisions with no production rate pace directly addresses plaintiff's concentration deficits."); *Tana S. v. Berryhill*, 2018 WL 4011560, at *7 (N.D.N.Y. Aug. 22, 2018) (RFC which limited plaintiff to simple, routine tasks accounted for moderate limitations in concentration, persistence, and pace).

**B. Step 5 Determination**

Finally, Plaintiff maintains that the ALJ erred in relying on the vocational expert because the hypothetical posed to the expert was based upon a flawed RFC assessment. Pl.'s Mem. of Law at p. 17. However, because substantial evidence supports the ALJ's RFC determination, this contention fails. *Ridley G. v. Comm'r of Soc. Sec.*, 2021 WL 4307507, at *11 (N.D.N.Y. Sept. 22, 2021) (citing *Wavercak v. Astrue*, 420 F. App'x 91, 94-95 (2d Cir. 2011). ("[The plaintiff] contends that the ALJ erred in relying on the testimony of a vocational expert because the expert's opinion was based on a flawed assessment of [his] RFC. Because [the court has] already concluded that substantial record evidence supports the RFC finding, we necessarily reject [the plaintiff's] vocational expert challenge.").

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: June 6, 2022
      Albany, New York

*Daniel J. Stewart*
U.S. Magistrate Judge